No. 23-4760

# In the United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

TIMOTHY MANN,

*Appellant.*

On Appeal from the United States District Court
for the Eastern District of North Carolina
Case No. 5:23-cr-00014-M-KS-1

## Appellant's Opening Brief

Ryan M. Gaylord
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 748-5890
rgaylord@belldavispitt.com

*Counsel for Appellant*

April 1, 2024

## **TABLE OF CONTENTS**

Table of Authorities..................................................................ii

Statement of Jurisdiction....................................................... 1

Statement of the Issue .......................................................... 1

Statement of the Case .......................................................... 1

    A.    Offense Conduct ....................................................... 1

    B.    Indictment and Preliminary Proceedings ........................... 4

    C.    Mann's Guilty Plea.................................................... 6

    D.    Sentencing Proceedings ............................................. 8

Summary of Argument........................................................... 13

Argument ......................................................................... 14

I.    The district court plainly erred in finding that Mann's guilty plea was supported by a sufficient factual basis, pursuant to Fed. R. Crim. P. 11(b)(3) and 18 U.S.C. § 2261A(2). ..................... 14

    A.    Standard of Review .............................................. 14

    B.    Legal Standard.................................................... 16

    C.    Elements of 18 U.S.C. § 2261A(2)........................... 19

    D.    Specific Intent under 18 U.S.C. § 2261A(2)........................ 22

    E.    Plain Error Analysis ............................................. 28

Conclusion ...................................................................... 31

Certificate of Compliance...................................................... 33

Certificate of Service .......................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Colautti v. Franklin*, 439 U.S. 379 (1979)................................................21

*Florida v. Nixon*, 543 U.S. 175 (2004)......................................................15

*Henderson v. Morgan*, 426 U.S. 637 (1976) ......................................27, 28

*Kelley v. Bohrer*, 93 F.4th 749 (4th Cir. 2024) .................................27, 28

*Kercheval v. United States*, 274 U.S. 220 (1927) ...................................15

*McCarthy v. United States*, 394 U.S. 459 (1969) ........................ 16, 19, 30

*Morissette v. United States*, 342 U.S. 246 (1952)...................................26

*Parker v. Ross*, 470 F.2d 1092 (4th Cir. 1972) .......................................16

*Strickland v. Washington*, 466 U.S. 668 (1984)......................................31

*United States v. Anderson*, 700 F. App'x 190 (4th Cir. 2017)...........20, 21

*United States v. Bartley*, 711 F. App'x 127 (4th Cir. 2017) ....................20

*United States v. Bell*, 359 F. App'x 442 (4th Cir. 2010).........................27

*United States v. Bennafield*, 287 F.3d 320 (4th Cir. 2002)....................22

*United States v. Carr*, 271 F.3d 172 (4th Cir. 2001)..............................31

*United States v. Cedelle*, 89 F.3d 181 (4th Cir. 1996)......................29, 31

*United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999).........................26

*United States v. Davis*, 801 F. App'x 80 (4th Cir. 2020)...................19, 20

*United States v. DeFusco*, 949 F.2d 114 (4th Cir. 1991)................ passim

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) .......................31

*United States v. Ewing*, 957 F.2d 115 (4th Cir. 1992) ............................. 18

*United States v. Fountain*, 777 F.2d 351 (7th Cir. 1985) ....................... 16

*United States v. Freed*, 688 F.2d 24 (6th Cir. 1982) ............................... 16

*United States v. Guichard*, 779 F.2d 1139 (5th Cir. 1986) .................... 18

*United States v. Ketchum*, 550 F.3d 363 (4th Cir. 2008) ............ 17, 18, 24

*United States v. Lebowitz*, 676 F.3d 1000 (11th Cir. 2012) .................... 25

*United States v. Massenburg*, 564 F.3d 337 (4th Cir. 2009) ....... 15, 29, 30

*United States v. Mastrapa*, 509 F.3d 652 (4th Cir. 2007) .............. passim

*United States v. Matthews*, 209 F.3d 338 (4th Cir. 2000) ...................... 21

*United States v. McCoy*, 895 F.3d 358 (4th Cir. 2018) .................. passim

*United States v. Mitchell*, 104 F.3d 649 (4th Cir. 1997) ........................ 17

*United States v. Morrow*, 914 F.2d 608 (4th Cir. 1990) ......................... 17

*United States v. Olano*, 507 U.S. 725 (1993) .............................. 14, 28, 30

*United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) .......................... 20

*United States v. Palomino-Coronado*,
    805 F.3d 127 (4th Cir. 2015) .............................................. 24-25, 26

*United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012) ......................... 20

*United States v. Pinto*, 838 F.2d 1566 (11th Cir. 1988) .......................... 18

*United States v. Shrader*, 675 F.3d 300 (4th Cir. 2012) ................ passim

*United States v. Stitz*, 877 F.3d 533 (4th Cir. 2017) .................. 15, 17, 20

*United States v. Thomas*, 367 F.3d 194 (4th Cir. 2004) ......................... 14

*United States v. Willis*, 992 F.2d 489 (4th Cir. 1993) ............................ 16

*United States v. Wilson*, 81 F.3d 1300 (4th Cir. 1996) .............. 17, 18, 27

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ........................................................................ 21

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) ................................... 31

**Rules**

Fed. R. App. P. 4 ....................................................................................... 1

Fed. R. Crim. P. 5 ..................................................................................... 5

Fed. R. Crim. P. 11 ........................................................................... passim

Fed. R. Crim. P. 52 ................................................................................. 14

**Statutes**

18 U.S.C. § 2261A ............................................................................ passim

18 U.S.C. § 2266 .................................................................................... 19

18 U.S.C. § 3161 .................................................................................. 5, 6

18 U.S.C. § 3231 ...................................................................................... 1

18 U.S.C. § 3553 ............................................................................... 10, 11

28 U.S.C. § 1291 ...................................................................................... 1

## United States Sentencing Guidelines

U.S.S.G. § 2A6.2 ...................................................................... 8, 9

U.S.S.G. § 3C1.1 ......................................................................... 9

U.S.S.G. § 3D1.4 ......................................................................... 9

U.S.S.G. § 3E1.1 ......................................................................... 9

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of conviction in the United States District Court for the Eastern District of North Carolina. *See United States v. Mann*, No. 5:23-cr-00014-M-KS-1 (E.D.N.C. Nov. 30, 2023). The district court's subject matter jurisdiction was derived from 18 U.S.C. § 3231.

The district court entered its judgment on November 30, 2023. JA210–216. Appellant timely noted this appeal on December 12, 2023. JA217, JA226; *see* Fed. R. App. P. 4(b)(1)(A). This Court has jurisdiction by virtue of 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

**I.** Whether the district court plainly erred in finding that Mann's guilty plea was supported by a sufficient factual basis.

## STATEMENT OF THE CASE

### A.    *Offense Conduct*

Around May 2021, Appellant Timothy Mann (hereinafter "***Appellant***" or "***Mann***") and an individual resident of North Carolina (hereinafter "***D.E.***") began extensively conversing *via* Instagram and other electronic communication platforms; over the following months, Mann and D.E. became close friends, and Mann moved to North Carolina

with D.E.'s encouragement and support.[1]  JA15, JA154, JA175, JA250, JA267.  Mann was born and raised in extremely adverse circumstances and had successfully obtained an associate's degree and stable employment in Brooklyn, New York despite the physical and mental health challenges that resulted from his background and upbringing.  *See* JA176–177, JA250, JA263–267, JA271–276.  Nevertheless, Mann saw his friendship with D.E. as one of genuine mutual trust, and his move to North Carolina as an opportunity for a fresh start.  JA175, JA267.

However, the relationship between Mann and D.E. deteriorated between August 2021 and January 2022, although the parties differ regarding the original cause of the conflict.  JA15, JA154, JA267.

---

[1]    At the outset, Mann respectfully notes that the timeline of relevant offense conduct in this case is unclear and/or inconsistent throughout the factual allegations considered by the district court, due largely to the fact that the majority of those allegations stem exclusively from uncorroborated statements by D.E., Mann, and others to law enforcement.  The following summary represents undersigned counsel's best understanding of the relevant sequence of events based on the limited information set forth in the Joint Appendix and on the district court docket.

Mann also notes that the sentencing proceedings in the district court provide additional detail regarding the individuals whose names have been redacted throughout this Opening Brief, as well as regarding Mann himself.  *See generally* JA160–208, JA248–304.

Mann and D.E. each publicly accused the other of displaying homosexual inclinations and/or behavior, which significantly intensified their conflict and mutual hostility. *See* JA175–176, JA184, JA282. This culminated with two physical confrontations—in January 2022, which resulted in some damage to D.E.'s personal vehicle, and in March 2022, which resulted in severe physical injuries to Mann—although the record contains no evidence indicating that Mann ever committed any direct violence or injury against D.E. or any other alleged victim. *See* JA15, JA169–170, JA175, JA193–194, JA250, JA267–268, JA277.

Following these confrontations, D.E. and his mother, also an individual resident of North Carolina (hereinafter "***Q.H.***"), began to communicate even more aggressively with Mann, demanding further financial contributions from him and threatening further physical violence against him if he did not comply with their demands and/or otherwise terminate his relationship with their family.[2] *See* JA15,

---

[2] Mann respectfully notes that, although D.E. and Q.H. denied sending some of these communications, they admitted that they sent the majority of the relevant messages, and that the messages they denied had, in fact, been sent from their respective social media accounts and phone numbers. *See* JA183–185, JA190–191.

JA169–170, JA175–176, JA183–185, JA251, JA268, JA278–280. In response, Mann sent D.E. and Q.H. an extensive series of digital messages—using several different accounts on a variety of social media and electronic communication platforms—threatening retaliatory violence against them and their family if they did not cease their ongoing harassment campaign, which allegedly caused D.E. and Q.H. to suffer "substantial emotional distress." JA16–21, JA155–156, JA170, JA175–176, JA186–187, JA250–251; *see also* JA177 (Mann's statement that he "was not gonna come down here and do anything to them."). Mann eventually returned to Brooklyn, but the parties continued to exchange intensely insulting and/or threatening messages between January 2022 and April 2023, including while the instant charges were pending in the district court below. *See generally* JA16–21, JA175–177, JA251.

## B.    *Indictment and Preliminary Proceedings*

In December 2022, the Government filed a Complaint alleging probable cause that Mann's behavior constituted cyberstalking pursuant to 18 U.S.C. § 2261A(2). JA12–22. In January 2023, the Grand Jury for the Eastern District of North Carolina returned an Indictment charging Mann with two counts of using "electronic mail and internet social media

applications[ ] to engage in a course of conduct that caused substantial emotional distress" to D.E. and Q.H., respectively, "with the intent to injure, harass, and intimidate," in violation of 18 U.S.C. § 2261A(2). JA228–229. Mann waived his right to preliminary hearings, and the case was transferred from the United States District Court for the Eastern District of New York (hereinafter the "*E.D.N.Y.*") to the United States District Court for the Eastern District of North Carolina (hereinafter the "*district court*" or the "*E.D.N.C.*"), pursuant to Fed. R. Crim. P. 5(c)(3). JA23–36; *see also* JA50, JA230.

The district court initially appointed counsel to represent Mann, JA39, and appointed substitute counsel when Mann's first trial counsel moved to withdraw, JA86–88, JA91, JA114. The court also entered a protective order regarding personal identifying information in the relevant discovery materials, at the Government's request. JA127–131, JA135–136. In January, February, March, April, May, June, and July 2023, Mann moved to continue the proceedings, without opposition from the Government; each time, the district court granted the motion (at least in part) and excluded the resultant time for purposes of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* JA40–43, JA51–54, JA55–58,

JA79–84, JA115–117, JA124–126, JA132–134; *see* JA4, JA6–8 (text orders dated February 14, March 15, May 2, June 12, and July 18, 2023); *see also* 18 U.S.C. § 3161(h)(7), (8).

In the meantime, the district court adopted the pretrial release order that had been initially entered by the E.D.N.Y., *see* JA37–38, and entered specific additional conditions, JA46–49. In March 2023, Mann was arrested for allegedly violating those conditions, and the accompanying proceedings were again transferred from the E.D.N.Y. to the E.D.N.C. JA59, JA60–76, JA77–78, JA85. When Mann failed to appear for the scheduled hearing regarding revocation of his pretrial release in North Carolina, he was once more arrested in New York and transferred to the jurisdiction of the district court below. JA89–90, JA92–113, JA231. Mann waived his right to preliminary, detention, and revocation hearings, JA118–121, and the court ordered that he be detained pending trial. JA122–123.

### C.    *Mann's Guilty Plea*

At Mann's arraignment in August 2023, the district court reviewed the trial and civil rights that would be waived with a guilty plea and explained the sentencing process. JA138–145, JA151–152.

Mann initially indicated that he intended to plead not guilty, *see* JA138, but following the court's overview of rights and the sentencing process, he abruptly elected to instead plead guilty to both charges without a written plea agreement, *see* JA146. Accordingly, the district court proceeded to conduct a plea colloquy pursuant to Fed. R. Crim. P. 11. *See generally* JA146–157.

The district court placed Mann under oath and confirmed that he was competent to proceed, had discussed the charges with his second appointed trial counsel, and was satisfied with his representation.[3] JA146–149. The court explained the nature of the charges and the potential penalties, specifically noting each element and statutory maximum sentence provided by 18 U.S.C. § 2261A(2). JA149–151. The court also confirmed that Mann's plea was not the result of any threats or promises and that Mann had answered each of its questions truthfully. JA151–152. The court ultimately concluded that Mann's plea was competent, knowing, and voluntary. JA157.

---

[3] Counsel acknowledged Mann's "history of mental health issues" and highlighted that topic as potentially relevant to sentencing, but both counsel and Mann himself repeatedly attested that Mann was competent to proceed. JA147–148.

In the absence of a written plea agreement, the district court instructed the Government to "proffer . . . the facts the United States would be prepared to prove at trial" as a factual basis for the plea. JA154. In response, the Government stated that there was "hostility" between D.E. and Mann; that Mann sent "violent and threatening" messages to D.E. and Q.H., including six specific examples; and that this caused D.E. and Q.H. to suffer "substantial emotional distress" and "reasonable fear of their life, or at the very least, serious bodily injury." JA154–156. Mann declined to dispute any element of the factual basis as set forth by the Government. JA156–157. The court concluded that "[i]n light of the plea of guilty and the [Government's] proffer," there was "an independent basis in fact as to each of the essential elements of the offense," and accepted Mann's guilty plea. JA157; *see* JA152–154.

### D.    *Sentencing Proceedings*

In light of Mann's objections to the draft presentence investigation report, *see* JA232–247, the final presentence report (the "**PSR**") calculated a total offense level of 23, based on a base offense level of 18 pursuant to UNITED STATES SENTENCING GUIDELINES ("**U.S.S.G.**") § 2A6.2(a); a 4-level enhancement for an alleged "pattern of activity

involving stalking, threatening, harassing, or assaulting the same victim," pursuant to U.S.S.G. § 2A6.2(b)(1); a 2-level enhancement for obstruction of justice based on Mann's violations of pretrial release, pursuant to U.S.S.G. § 3C1.1; a 2-level grouping adjustment based on the two charges to which Mann pleaded guilty, pursuant to U.S.S.G. § 3D1.4; and a 3-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b). JA256–257. The PSR also calculated a criminal history category of I, JA252, resulting in an advisory Sentencing Guidelines range of 46 to 57 months' imprisonment and 1 to 3 years' supervised release, as well as the applicable fines and restitution, JA258–259. Neither Mann nor the Government objected to the final PSR. JA261.

Mann requested a downward variance sentence, noting his extremely challenging personal background, his strong education and employment record, and his personal health challenges, as well as the complicated, reciprocal, and rapidly escalating nature of the interpersonal conflict (between Mann, D.E., and Q.H.) underlying the offense conduct at issue. JA262–270; *see* JA271–280 (exhibits supporting motion for downward variance); *see also* JA259 (PSR note that "[t]he

court may wish to consider a downward variance based upon the factors listed in 18 U.S.C. § 3553(a)"). The Government moved for restitution based on the out-of-pocket expenses allegedly incurred by D.E. and Q.H. during the relevant time period. *See* JA281–304.

At the sentencing hearing, the district court confirmed that Mann was competent to proceed, that he had reviewed and understood the PSR, and that he had no further objections to the PSR. JA160–163. Accordingly, the court reviewed the material set forth in the PSR and adopted it in full, including the advisory Sentencing Guidelines range of 46 to 57 months' imprisonment and the recommended special conditions of supervised release. JA163–166. Mann's trial counsel reiterated his request for a downward variance sentence, highlighting his traumatic upbringing, his mental and physical health struggles and resultant difficulty in managing stressful situations, his limited criminal record and record of educational and professional success when properly supported, and his complicated, mutually hostile relationship with D.E. as discussed in detail above.[4] JA166–173; *see also* JA190–192.

---

[4] Mann's trial counsel also discussed his failure to appear for the April 2023 revocation hearing along similar lines. *See* JA173–174.

Mann spoke on his own behalf, primarily arguing that his conduct was motivated by fear for his own safety and hurt stemming from D.E.'s aggressive behavior in the context of a once-trusted relationship; Mann also asserted that he intended to move forward from that relationship by diligently following the court's orders and returning to his home and career in New York. JA175–178.

The Government requested a sentence within the advisory Guidelines range, on the grounds that Mann's pattern of electronic communications was extremely severe and that Mann had inadequately displayed his remorse. JA183–190. In particular, the Government argued that D.E.'s and Q.H.'s aggressive behavior towards Mann did not mitigate the appropriate sentence because the severity of Mann's conduct was entirely independent of the fact that D.E. and Q.H. had simply "happen[ed] to get mad and reach their breaking point." JA183–185. Q.H. also spoke on behalf of the alleged victims of Mann's conduct, specifically insisting that the district court should sentence Mann to "the max amount of time" statutorily available, "and then some." JA179–182.

In light of the parties' arguments and its consideration of the sentencing factors set forth by 18 U.S.C. § 3553(a), the district court

broadly decided to "vary downward some," but with a significant escalation of penalties upon Mann's violation of any of the conditions of his supervised release. JA195–196; *see generally* JA192–199. The court specifically acknowledged the difficulty of Mann's upbringing, but declined to enter any findings of fact regarding the nature and extent of the mutual escalation of hostilities between Mann, D.E., and Q.H.[5] JA193–194. The court also noted that convictions pursuant to 18 U.S.C. § 2261A(2) often involve First Amendment concerns, but that the threats in this case fell far outside such territory. JA197. Finally, the court analyzed the need for the sentence to reflect the seriousness of the offense, protect the public, and provide adequate deterrence, concluding that the facts at hand presented "a borderline mental illness case where [Mann's] personal history is such that his inability to grasp and deal with the level of confrontation that happened here led to a particularly horrific spiral of threat." JA198–199.

---

[5] Mann respectfully notes that he continues to dispute many of the factual allegations raised by the Government and by Q.H. at the sentencing hearing, but that the district court's specific nonreliance on those facts at sentencing ultimately renders them moot. *See* JA193–194.

Accordingly, the district court sentenced Mann to 36 months' imprisonment and 36 months' supervised release. JA200–201; *see* JA210–212. The court also articulated and imposed several specific conditions of supervised release, describing its reasoning for each as appropriate, and ordered restitution as requested by the Government. JA202–208, JA213–216. Mann and his second appointed trial counsel independently requested appointment of new counsel on appeal and timely noted this appeal. JA217–221, JA222–225, JA226; *see* JA227.

## SUMMARY OF ARGUMENT

The breakdown of the relationship between Mann and D.E. is unquestionably tragic, and the resultant escalation of threatening messages and physical violence presents an unusually complex, emotional, and hotly disputed set of facts. Mann respectfully submits that his specific intent to "kill, injure, harass, [or] intimidate" D.E. and/or Q.H., as required by 18 U.S.C. § 2261A(2) and charged in the Indictment, requires a careful and thorough analysis of the available evidence. But the Government failed to present that evidence to the district court: its proffer of a factual basis made no reference to Mann's state of mind whatsoever, and the record contains extremely limited independently

reliable evidence from which the court could have inferred the requisite intent. Therefore, the facts available to the district court were insufficient to establish that Mann possessed the requisite specific intent, even if taken as true, and Mann was deprived of the opportunity to "realiz[e] that his conduct [did] not actually fall within the charge." *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007). Mann respectfully submits that the district court plainly erred in finding that his plea was supported by an adequate factual basis, in violation of Fed. R. Crim. P. 11(b)(3), and respectfully requests that this Court accordingly vacate his conviction and remand for further proceedings.

## ARGUMENT

I.  **The district court plainly erred in finding that Mann's guilty plea was supported by a sufficient factual basis, pursuant to Fed. R. Crim. P. 11(b)(3) and 18 U.S.C. § 2261A(2).**

### A. *Standard of Review*

This Court ordinarily "review[s] a finding of a factual basis for a guilty plea for abuse of discretion." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). However, this Court applies plain error review to claims that were not properly preserved in the proceedings below. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731 (1993); *see United States v. McCoy*, 895 F.3d 358, 364

(4th Cir. 2018) (concluding that "[b]ecause [the defendant] didn't seek to withdraw his guilty plea in the district court, [this Court] review[s] his challenge for plain error").[6]

To establish plain error, a party must establish that an error (1) was made, (2) is plain (*i.e.*, clear or obvious), and (3) affected its substantial rights. *United States v. Massenburg*, 564 F.3d 337, 342–43 (4th Cir. 2009). Then, this Court must consider whether the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 343 (internal quotation marks omitted). Nevertheless, this Court has not construed the plain error standard as a categorical bar against a defendant's challenge to the validity of the factual basis supporting a guilty plea. After all, "even valid appeal waivers do not bar claims that a factual basis is insufficient to support a

---

[6]    Mann acknowledges that, although the parties ultimately engaged in a detailed discussion regarding the underlying facts, including Mann's state of mind, in connection with the subsequent sentencing proceedings, *see* JA160–208, JA248–304, these arguments are likely inadequate to preserve a challenge to the factual basis supporting his guilty plea for purposes of direct appeal. *See United States v. Stitz*, 877 F.3d 533, 536 (4th Cir. 2017) (citing *Florida v. Nixon*, 543 U.S. 175, 187 (2004), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927)).

guilty plea." *McCoy*, 895 F.3d 358, 364 (4th Cir. 2018); *compare United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (citing *Parker v. Ross*, 470 F.2d 1092, 1093 (4th Cir. 1972), and *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982)).

### B.    *Legal Standard*

Rule 11 of the Federal Rules of Criminal Procedure requires that "before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). Rule 11(b)(3) "ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (citing *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985), *cert. denied*, 475 U.S. 1029 (1986)). "The requirement to find a factual basis is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Mastrapa*, 509 F.3d at 660 (internal quotation marks omitted); *accord McCarthy v. United States*, 394 U.S. 459, 467 (1969).

This Court has generally adopted a deferential approach to the sufficiency of the factual basis supporting a guilty plea on direct appeal. For example, this Court has recognized that even "a bare recitation of the facts will satisfy Rule 11 so long as it establishes the elements of the offense." *McCoy*, 895 F.3d at 365 (citing *DeFusco*, 949 F.2d at 120); *see United States v. Stitz*, 877 F.3d 533, 536–37 (4th Cir. 2017) (citing *United States v. Ketchum*, 550 F.3d 363, 367 (4th Cir. 2008), and *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996)); *see also United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997) (citing *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990)) (noting that the factual basis must support a "conclusion that the defendant committed all of the elements of the offense").

Similarly, "[t]he district court is not required to replicate the trial that the parties sought to avoid, or to rely only on the Rule 11 plea colloquy." *Ketchum*, 550 F.3d at 366. Instead, the court "need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense." *Stitz*, 877 F.3d at 536 (quoting *Mitchell*, 104 F.3d at 652). Accordingly, this Court has held that "the trial court has wide discretion

when determining whether a factual basis exists," and "may conclude that a factual basis exists from anything that appears on the record." *DeFusco*, 949 F.2d at 120; *see Ketchum*, 550 F.3d at 366–67; *see also United States v. Ewing*, 957 F.2d 115, 120 (4th Cir. 1992) (noting that "[p]roof of *scienter*, like any mental state, necessary must be . . . by inference," and rejecting "a requirement that all such subjective mental states be proved by direct evidence or uncontroverted, unrecanted confessions of guilt").

But whether derived from a stipulation of facts or from record evidence more broadly, the available evidence must be "precise enough to satisfy the judge of the factual basis for" each element required by a defendant's guilty plea. *Wilson*, 81 F.3d at 1308 (citing *DeFusco*, 949 F.2d at 120; *United States v. Pinto*, 838 F.2d 1566, 1569 (11th Cir. 1988); and *United States v. Guichard*, 779 F.2d 1139, 1146 (5th Cir.), *cert. denied*, 475 U.S. 1127 (1986)). Mann respectfully submits that this principle is consistent with the broader purposes of the factual basis requirement set forth in Rule 11. As the U.S. Supreme Court has specifically concluded, if "the district judge resorts to 'assumptions' not based upon recorded responses to his inquiries" with regard to any

element of the charged offense, then the factual record accompanying the resultant conviction will lack a reliable "determination of [the] guilty plea's voluntariness," both on direct appeal and on "any subsequent post-conviction proceeding based upon a claim that the plea was involuntary." *McCarthy*, 394 U.S. at 467.

### C.   *Elements of 18 U.S.C. § 2261A(2)*

Both of the charges to which Mann pleaded guilty alleged a violation of 18 U.S.C. § 2261A(2).   JA228–229.   Accordingly, the Government was required to proffer evidence that, if true, would establish Mann's guilt on each of the four distinct mandatory elements of that offense.   First, Mann must have used facilities of interstate commerce, including an "interactive computer service" or "electronic communication service."   18 U.S.C. § 2261A(2); *see United States v. Davis*, 801 F. App'x 80, 87 (4th Cir. 2020).   Second, Mann must have engaged in a "course of conduct," which this Court and the statutory framework have defined as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."   18 U.S.C. § 2261A(2); *see* 18 U.S.C. § 2266(2); *see also United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012); *Davis*, 801 F. App'x at 87.

Third, Mann's conduct must have placed the two identified victims "in reasonable of [ ] death [ ] or serious bodily injury," or have "cause[d], attempt[ed] to cause, or [ ] be[en] reasonably expected to cause substantial emotional distress" among those individuals. 18 U.S.C. § 2261A(2)(A), (B); *see Shrader*, 675 F.3d at 310. In assessing this element, this Court considers whether "[a] rational trier of fact could find that" the offense conduct "would be reasonably expected to cause substantial emotional distress." *Davis*, 801 F. App'x at 87–88; *see also United States v. Anderson*, 700 F. App'x 190, 192 (4th Cir. 2017).

Fourth, and most importantly, Mann must have possessed "the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate" each of D.E. and Q.H., as alleged in the Indictment. 18 U.S.C. § 2261A(2); *see Shrader*, 675 F.3d at 309–10. This Court has explicitly identified this element as requiring proof of the defendant's <u>specific</u> intent to "kill, injure, harass, [or] intimidate" the <u>specific</u> victims charged. *United States v. Bartley*, 711 F. App'x 127, 129 (4th Cir. 2017) (citing *United States v. Osinger*, 753 F.3d 939, 941 (9th Cir. 2014), and *United States v. Petrovic*, 701 F.3d 849, 860 (8th Cir. 2012)); *accord Stitz*, 877 F.3d at 536 (citing

*United States v. Matthews*, 209 F.3d 338, 352 (4th Cir. 2000)) (highlighting distinction between specific intent element and knowledge element in related statute).

Mann respectfully submits that this Court's published analysis of Constitutional challenges to 18 U.S.C. § 2261A(2) serves to further reinforce the central role played by the specific intent element of that statute. For example, in considering arguments that 18 U.S.C. § 2261A(2) was unconstitutionally vague, this Court noted "the Supreme Court's instruction that, rather than being a source of fatal vagueness, a *scienter* requirement may mitigation a law's vagueness," concluding that "[g]iven that the [G]overnment <u>must prove both intent and effect</u>, we need not worry that the statute sets an unclear trap for the unwary." *Shrader*, 675 F.3d at 311 (emphasis added) (internal quotation marks omitted) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982), and *Colautti v. Franklin*, 439 U.S. 379, 395 (1979)); *see also Anderson*, 700 F. App'x at 192–93. Likewise, in considering arguments that 18 U.S.C. § 2261A(2) was unconstitutionally overbroad, this Court noted that "this statute does not punish fungible acts, such as possession of cocaine in two different receptacles, but rather

defines the defendant's crime . . . in terms of his <u>intent to strike fear in a</u> <u>particular individual</u>." *Shrader*, 675 F.3d at 313 (emphasis added) (internal citation omitted) (citing *United States v. Bennafield*, 287 F.3d 320, 323 (4th Cir. 2002)).

### D.    *Specific Intent under 18 U.S.C. § 2261A(2)*

In this case, the factual basis introduced in support of Mann's guilty plea provides a detailed account of Mann's messages to the alleged victims during the relevant period of time, as well as the emotional effects of Mann's conduct on those individuals, but it does not speak to the remaining intent element of the cyberstalking offense on which Mann was convicted, pursuant to 18 U.S.C. § 2261A(2). JA154–156. Therefore, the facts available to the district court in support of Mann's guilty plea were insufficient to establish that he possessed the requisite specific intent to "kill, injure, harass, [or] intimidate" D.E. and/or Q.H., even if taken as true. *See* 18 U.S.C. § 2261A(2).

The factual basis proffered by the Government at Mann's Rule 11 hearing was likely adequate to support the district court's conclusion that the first two elements of 18 U.S.C. § 2261A(2)—pertaining to Mann's course of conduct and usage of interstate communication platforms—had

been adequately satisfied. *See* JA155–156 (describing Mann's pattern of correspondence and alleging six examples of digital messages sent from Mann to D.E. and Q.H.). Similarly, the Government likely established the third element of 18 U.S.C. § 2261A(2)—pertaining to the emotional distress experienced, or reasonably expected to be experienced, by the alleged victims—by detailing the "violent and threatening" nature of the alleged messages and specifically asserting that D.E. and Q.H. were each placed in "reasonable fear of their life, or at the very least, serious bodily injury from this defendant." JA154–156. Accordingly, the validity of Mann's guilty plea hinges on whether the factual basis sufficiently established that Mann acted with the specific intent to "kill, injure, harass, [or] intimidate" D.E. and/or Q.H., as required by the fourth element of 18 U.S.C. § 2261A(2).

Mann respectfully submits that the evidence available at the time of his guilty plea fell far short of establishing that element. The Government did not raise any specific factual allegations that would support a finding of Mann's specific intent pursuant to 18 U.S.C. § 2261A(2), even if they were taken as true. *See* JA154–156; *see generally* JA138–157. At most, the factual basis introduced by the Government

asserted, without explanation or citation to any particular fact, that some of the messages between Mann, D.E., and Q.H. were "violent and threatening," and that there was "hostility" between those individuals. JA154–155. The record also contains limited specific indicia from which the district court could have even inferred Mann's state of mind during the relevant timeframe, as discussed in further detail below.

As such, the record fails to establish that Mann engaged in the pattern of electronic communications at issue for the specific purpose of harming, harassing, or intimidating D.E. and/or Q.H., as required by statute and recognized by this Court. *See* 18 U.S.C. § 2261A(2); *Shrader*, 675 F.3d at 310–13. Although "[a] stipulated recitation facts alone" can be "sufficient to support a plea," *Ketchum*, 550 F.3d at 367, the recitation in this case did not establish or even reference every element of the charged offenses, unlike in *McCoy*, 895 F.3d at 365, and *DeFusco*, 949 F.2d at 120. JA154–156. Because the Government has the burden of establishing specific intent where required as an element of the relevant offense, Mann respectfully submits that the record's silence on this fact is fatal to the validity of his conviction pursuant to Fed. R. Crim. P. 11(b)(3). *See*, *e.g.*, *United States v. Palomino-Coronado*,

805 F.3d 127, 130 (4th Cir. 2015); *see also United States v. Lebowitz*, 676 F.3d 1000, 1013 (11th Cir. 2012).

Moreover, although the district court "may conclude that a factual basis exists from anything that appears on the record," *DeFusco*, 949 F.2d at 120, the record in this case contains extremely limited material to which the court could have referred with regard to Mann's specific intent. More information regarding Mann's course of conduct in the context of his relationships with D.E. and Q.H. came before the district court in the sentencing context, *see generally* JA160–208, JA248–304, but at the time of his guilty plea, the evidence before the court was generally limited to the statements of probable cause submitted by the Government in connection with the Complaint, Indictment, and arrest warrants in this case, as well as the allegations presented by the Government as a factual basis at the end of the Rule 11 hearing, *see*, *e.g.*, JA12–22, JA95–98, JA154–156, JA228–229, JA231.  Given that those materials, in turn, were based solely on uncorroborated allegations regarding Mann's intentions that D.E. and Q.H. had made to law enforcement, Mann respectfully submits that they carry minimal evidentiary weight with regard to his subjective state of mind during the relevant time period.

Mann further respectfully submits that the threatening nature of the messages themselves, standing alone, presented an inadequate basis from which the district court could have inferred the requisite specific intent. *See*, *e.g.*, JA155–156. After all, the hostile nature of the messages themselves is already thoroughly captured by the third element of 18 U.S.C. § 2261A(2), which requires a showing of the alleged victims' emotional distress or reasonable expectation thereof. Permitting this fact to serve as a proxy for specific intent would effectively eviscerate the *mens rea* requirement of 18 U.S.C. § 2261A(2) as an independent element of the underlying crime. After all, "[r]ecalling the presumption against strict liability in criminal law, it is critically important to be certain that the defendant's purpose was, in fact," to accomplish the goals prescribed by the relevant statute. *United States v. Crandon*, 173 F.3d 122, 129 (3d Cir. 1999) (citing *Morissette v. United States*, 342 U.S. 246, 250–63 (1952)). Therefore, although trial courts are often "presented only with circumstantial evidence to show that a defendant acted with purpose," the record does not contain sufficient circumstantial evidence to draw such a conclusion in this case. *Palomino-Coronado*, 805 F.3d at 131.

Finally, Mann acknowledges that he repeatedly affirmed his guilt on the charges as set forth in the Indictment, and that "[i]n the absence of clear and convincing evidence to the contrary, a defendant is bound by statements made under oath during his plea colloquy." *McCoy*, 895 F.3d at 365 (quoting *United States v. Bell*, 359 F. App'x 442, 444 (4th Cir. 2010)); *see* JA152–154, JA156–157; *see also Wilson*, 81 F.3d at 1308. But Mann respectfully submits that this fact is likewise inadequate to support a finding that his plea was supported by an independent factual basis, including with regard to the specific intent element of 18 U.S.C. § 2261A(2). After all, if a plea of guilty were categorically sufficient to establish a factual basis for each element of a charged offense, then the requirement of an independent factual basis would be of little import.

For instance, in this Court's words, the U.S. Supreme Court has specifically held that a defendant's "admission to [a] factual basis" alleging "that he stabbed the victim, killing her[,] didn't necessarily mean that he was admitting to <u>intending</u> to kill the victim." *Kelley v. Bohrer*, 93 F.4th 749, 758 (4th Cir. 2024) (emphasis added) (citing *Henderson v. Morgan*, 426 U.S. 637, 646 (1976)). Instead, the Government must proffer facts that, if true, would independently establish the defendant's

guilt on each element of the charged offense, including any applicable specific intent requirements. This may be inferred from a "stipulat[ion] to that fact," an "expl[anation] . . . that [the] plea would be an admission of that fact," or the defendant's "factual statement or admission necessarily implying that he had such intent." *Henderson*, 426 U.S. at 646. Here, just as discussed in *Kelley* and *Henderson*, the Government did not proffer any such evidence, or even make a passing reference to Mann's intentions during the relevant timeframe.

Accordingly, even if taken as true, the record before the district court was insufficient to establish that Mann specifically intended to "kill, injure, harass, [or] intimidate" D.E. and/or Q.H. as required by 18 U.S.C. § 2261A(2), and the court incorrectly concluded that the plea was "supported by an independent basis in fact as to each of the essential elements of the offense," in violation of Fed. R. Crim. P. 11(b)(3). JA157.

## E.    *Plain Error Analysis*

However, because Mann did not move to withdraw his guilty plea in the district court, this Court may only vacate his plea if the district court plainly erred in concluding that it was supported by a sufficient factual basis. *See McCoy*, 895 F.3d at 364; *Olano*, 507 U.S. at 731. As

referenced above, this requires that an error (1) was made, (2) is plain (*i.e.*, clear or obvious), and (3) affected the defendant's substantial rights. *Massenburg*, 564 F.3d at 342–43.

First, "[a]n error is plain, at least, when the error is clear both at the time it occurred and at the time of appeal." *United States v. Cedelle*, 89 F.3d 181, 185 (4th Cir. 1996). This Court had explicitly recognized the specific intent element of 18 U.S.C. § 2261A(2) at the time of the guilty plea in this case, so Mann respectfully submits that the Government's failure to adequately support that element of the charge constitutes unambiguous plain error. *Shrader*, 675 F.3d at 310–13.

Next, this Court has specifically held that the insufficiency of the factual basis "result[s] in a flawed guilty plea that affect[s] [a defendant's] substantial rights." *Mastrapa*, 509 F.3d at 660. More broadly, Mann respectfully notes that, as discussed above, Rule 11's factual basis requirement "is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Mastrapa*, 509 F.3d at 660. This statute and this case present precisely such a scenario. The parties did not dispute that

Mann sent an extensive series of aggressive messages to D.E. and Q.H., but they ultimately differed greatly with regard to Mann's state of mind during the relevant period of time. The Government's failure to develop the record, or even raise relevant allegations, regarding this essential element of the crime, as well as the district court's failure to hold the Government to its burden in that regard, deprived Mann of the opportunity to "realiz[e] that his conduct [did] not actually fall within the charge," and directly affected his substantial rights. *See McCarthy*, 394 U.S. at 467.

Finally, Mann respectfully submits that holding a defendant guilty without factual support for each element of the relevant offense must "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Massenburg*, 564 F.3d at 342–43. "To allow a district court to accept a guilty plea from a defendant who did not admit to an essential element of guilt under the charge . . . would surely cast doubt upon the integrity of our judicial process." *Mastrapa*, 509 F.3d at 661 (citing *Olano*, 507 U.S. at 735–36). Thus, this violation infringed on Mann's autonomy interest in "mak[ing] his own choices about the proper way to protect his own liberty." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907–

08 (2017); *see also United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). This, in turn, inherently affected the fairness, integrity, or public reputation of the judiciary, regardless of Mann's alleged culpability for the underlying offenses. *Cedelle*, 89 F.3d at 186 n.4 (noting that this principle applies "even [where] the record demonstrates that the defendant is guilty").

Mann submits that the record before the district court was insufficient to establish that he was guilty of each element required for conviction under 18 U.S.C. § 2261A(2). Therefore, as this Court has noted, "the appropriate remedy in these circumstances is to vacate the judgment and remand to the district court for a new Rule 11 proceeding." *Mastrapa*, 509 F.3d at 661 (citing *United States v. Carr*, 271 F.3d 172, 180–81 (4th Cir. 2001)). Even under plain error review, Mann respectfully requests that this Court vacate the district court's acceptance of his guilty plea and remand for a new plea colloquy compliant with Fed. R. Crim. P. 11.

## <u>CONCLUSION</u>

For the reasons set forth above, Appellant Timothy Mann respectfully requests that this Court vacate his conviction and sentence

and remand for a new plea colloquy consistent with Fed. R. Crim. P. 11.

Mann also respectfully requests oral argument on the issues presented

herein.

Respectfully submitted this the 1st day of April, 2024.

*/s/ Ryan M. Gaylord*

Ryan M. Gaylord
N.C. Bar No. 53760
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone:  (336) 722-3700
Facsimile:  (336) 748-5890
rgaylord@belldavispitt.com

*Counsel for Appellant*
*Timothy Mann*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(B), the undersigned certifies that the foregoing brief complies with the Court's word limit as calculated using the word count feature of the word processing software. Specifically, this Opening Brief contains 6,388 words. This count includes the body of the brief and headings, but does not include the caption, signature lines, this certificate, or the certificate of service.

This the 1st day of April, 2024.

*/s/ Ryan M. Gaylord*
Ryan M. Gaylord
N.C. Bar No. 53760
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 748-5890
rgaylord@belldavispitt.com

*Counsel for Appellant*
*Timothy Mann*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notification to all counsel of record in this matter.

This the 1st day of April, 2024.

> */s/ Ryan M. Gaylord*
> Ryan M. Gaylord
> N.C. Bar No. 53760
> BELL, DAVIS & PITT, P.A.
> 100 N. Cherry St. Suite 600
> Winston-Salem, NC 27101
> Telephone: (336) 722-3700
> Facsimile: (336) 748-5890
> rgaylord@belldavispitt.com
>
> *Counsel for Appellant*
> *Timothy Mann*